# No. 18-15845

# IN THE UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

THE DEMOCRATIC NATIONAL COMMITTEE; et al.,

*Plaintiffs-Appellants*,

v.

KATIE HOBBS; et al.,

*Defendants-Appellees,*
and

THE ARIZONA REPUBLICAN PARTY; et al.,

*Intervenor-Defendants-Appellees*

On Appeal from the United States District Court
for the District of Arizona
No. CV-16-01065-PHX-DLR

## JOINDER IN MOTION UNDER CIRCUIT RULE 41 FOR A STAY OF THE MANDATE

| | |
|---|---|
| Brett W. Johnson | (602) 382-6000 |
| Colin P. Ahler | *Attorneys for Intervenor-* |
| SNELL & WILMER L.L.P. | *Defendant-Appellees* |
| 400 E. Van Buren Street | Arizona Republican Party, Bill |
| Suite 1900 | Gates, Suzanne Klapp, Debbie |
| Phoenix, AZ  85004-2202 | Lesko, and Tony Rivero |

# TABLE OF CONTENTS

**Page**

Prong One ................................................................................................ 5
Prong Two ............................................................................................... 8
Conclusion ............................................................................................ 11

# TABLE OF AUTHORTIES

                                                         **Page**

**Federal Cases**

*Evenwel v. Abbott*
   136 S.Ct. 1120 (2016) ............................................................................... 5

*Frank v. Walker*
   768 F.3d 744 (7th Cir. 2014) ................................................................... 7

*Gonzales v. Arizona*
   677 F.3d 383 (9th Cir. 2012) ................................................................... 7

*League of Women Voters of N.C. v. North Carolina*
   769 F.3d 224 (4th Cir. 2014) ................................................................... 5

*Lee v. Va. State Bd. of Elections*
   843 F.3d 592 (4th Cir. 2016) ................................................................... 6

*Ohio Democratic Party v. Husted*
   834 F.3d 620 (6th Cir. 2016) ............................................................... 6, 9

*Sandusky Cty. Democratic Party v. Blackwell*
   387 F.3d 565 (6th Cir. 2004) ................................................................... 9

*Thornburg v. Gingles*
   478 U.S. 30 (1986) ................................................................................... 6

*White v. Regester*
   412 U.S. 755 (1973) ................................................................................. 8

Intervenor-Defendant-Appellees the Arizona Republican Party, Bill Gates, Suzanne Klapp, Debbie Lesko, and Tony Rivero hereby give notice of their joinder in the *Motion Under Circuit Rule 41 For a Stay of the Mandate* filed by Defendant-Appellee Attorney General Mark Brnovich on January 31, 2020. In addition to joining the Attorney General's Motion, Intervenor-Defendant-Appellees write separately to articulate additional reasons why the anticipated Petition for a Writ of Certiorari presents a substantial question and, thus, there is good cause for a stay pursuant to Federal Rule of Appellate Procedure 41(d)(2).

This case presents a significant question because the majority opinion's novel application of both prongs of the Section 2 Voting Rights Act ("VRA") test is in conflict with other Section 2 authorities and has cast doubt on the ability of any state to enact procedural election regulations (or enforce existing ones) that may have some disparate impact on *any* member of a protected group, regardless of how minor that impact may be and notwithstanding the legitimate policy reasons that the state may have for the regulation. For instance, in concluding that Arizona's regulation of ballot harvesting violated Section 2, the majority

4

departed from the historical deference given to states to enact prophylactic regulations to protect election integrity and to prevent election fraud *before* such fraud takes place. Moreover, in concluding that Arizona must count ballots cast out of precinct ("OOP"), the majority effectively prioritized national and statewide elections over local elections and candidates. *See* Slip. Op. at 109-12; *id.* 151-56 (Bybee, J., dissenting). Because local elections are the "laboratories of democracy," this case presents issues of enormous importance. *Evenwel v. Abbott*, 136 S.Ct. 1120, 1141 (2016) (Thomas, J. concurring) (internal citations and quotation marks omitted).

**Prong One**

The first step of the Section 2 VRA analysis "ask[s] whether the challenged standard, practice or procedure results in a disparate burden on members of the protected class." Slip. Op. at 37. The majority applied an extraordinarily low bar to meet this step, effectively premising its finding of a discriminatory burden on the principle that a discriminatory burden is present when "'*any*' minority voter is being denied equal electoral opportunities." *League of Women Voters of N.C. v. North*

5

*Carolina*, 769 F.3d 224, 244 (4th Cir. 2014) (emphasis added); *see also* Slip. Op. at 142-46 (Bybee, J. dissenting).

This premise creates enormous uncertainty regarding election regulation going forward because it conflicts with how the VRA has been applied by several other courts. First, the majority opinion conflicts with Supreme Court's precedent that the relevant inequality to support a Section 2 claim must be one that impacts the opportunities of a protected group "to elect their preferred representatives." *Thornburg v. Gingles,* 478 U.S. 30, 47 (1986).

Second, the majority premise conflicts with the decisions of the Fourth, Sixth and Seventh Circuits, which have recognized that it is implausible to read Section 2 as requiring perfect racial parity or that voting be equally convenient. *See Lee v. Va. State Bd. of Elections*, 843 F.3d 592, 601 (4th Cir. 2016) (holding that Section 2 "does not sweep away all election rules that result in a disparity in the convenience of voting"); *Ohio Democratic Party v. Husted*, 834 F.3d 620, 637 (6th Cir. 2016) ("[P]roof of a disparate impact—amounting to denial or abridgement of protected class members' right to vote—that *results from*

*the challenged standard or practice* is necessary to satisfy the first element of the test, but is not sufficient to establish a valid Section 2 vote-denial-or-abridgement claim"); *Frank v. Walker*, 768 F.3d 744, 754 (7th Cir. 2014) ("No state has exactly equal . . . voting system[s]. . . . Yet it would be implausible to read § 2 as sweeping away almost all registration and voting rules. It is better to understand § 2(b) as an equal-treatment requirement . . . than as an equal-outcome command.").

Third, the majority's disparate burden analysis conflicted with the previous en banc decision of this Court involving a Section 2 vote-denial claim. *See Gonzales v. Arizona*, 677 F.3d 383, 405 (9th Cir. 2012) (en banc) ("[A] § 2 challenge 'based purely on a showing of some relevant statistical disparity between minorities and whites,' without any evidence that the challenged voting qualification causes that disparity, will be rejected.").

The District Court correctly summarized the practical approach to the VRA test that has been frequently used by other courts, but that was not accepted by the majority: "Perfect racial parity is unlikely to exist in any aspect of a state's election system, . . . [that u]nless the VRA is to be

7

interpreted to sweep away all elections regulations, some degree of disproportionality must be tolerable." ER54.

In addition, Supreme Court precedent suggests that the judiciary tolerates different results from the application of an election law if those results were "justif[ied] 'based on legitimate considerations incident to the effectuation of a rational state policy.'" *White v. Regester*, 412 U.S. 755, 764 (1973). The majority opinion does not, however, provide any limiting principles to determine what should be considered "a de minimis effect in a facially neutral time, place, or manner rule" in its Section 2 analysis. *See* Slip. Op. at 145 (Bybee, J., dissenting). Such a decision has significant and wide-ranging impact on *any* election law that is meant to protect the integrity of the voting system in the United States.

**Prong Two**

The second step of a Section 2 analysis "ask whether, under the 'totality of the circumstances,' there is a relationship between the challenged 'standard, practice, or procedure,' on the one hand, and 'social and historical conditions' on the other." Slip. Op. at 37. In determining that this step had been satisfied, the majority made its own evaluation of

8

the totality of the facts in order to conclude that "Plaintiffs have successfully shown that all of the considered Senate factors weigh in their favor." Slip. Op. at 81. This was very different from the test used by the Sixth Circuit, which assesses whether the challenged election practice "interacts with social and historical conditions" reflected in the Senate Factors, "causing racial inequality in the opportunity to vote." *Husted*, 834 F.3d at 638. In other words, the Sixth Circuit requires more than simply showing that some combination of the Senate Factors is present.

In addition, the majority's application of Senate Factor Nine—"the tenuousness of the justification for the challenged voting practices"—creates enormous uncertainty about the ability of a state to justify potential minor disparities in the convenience of voting. Slip. Op. at 48. In its analysis of the OOP rule, for instance, the majority did not question that a precinct-based system of voting has significant and numerous advantages to a state. *Id.* at 147-48 (Bybee, J., dissenting) (citing *Sandusky Cty. Democratic Party v. Blackwell*, 387 F.3d 565, 569 (6th Cir. 2004)). The majority instead asserted that those advantages are unrelated to Arizona's policy of not counting ballots cast OOP. Slip Op.

9

at 78. Based on this reasoning, the majority concluded that "[t]here is no finding by the district court that would justify, on any ground, Arizona's policy of entirely discarding OOP ballots." *Id.* at 77-80 (citing only to the District Court's findings on ER74).

The majority overlooked, however, the District Court's factual finding that the enforcement mechanism contained in Arizona's OOP rule is precisely what allows Arizona to realize the "the *full range* of benefits that correspond with the precinct-based system." ER49 (emphasis added). In particular, eliminating the OOP rule could cause in-person voters to intentionally or inadvertently vote in the wrong location, which would directly undermine the goals of the precinct system, such as orderly election administration, reduced voter wait times, and the promotion of voting for local issues and candidates. ER48. This will particularly impact local candidates, who will now have "to expend resources to educate voters on why it nevertheless is important to vote within their assigned precincts." *Id.* The same burden will not be imposed on national or statewide candidates.

10

These critical factual findings, which are appropriately within the District Court's purview, demonstrate that the justifications for Arizona's OOP policy are actually non-tenuous and far outweigh the minimal burdens it may impose on the convenience of in-person voting. Indeed, "[p]recinct-based voting is a quintessential time, place, and manner election regulation. Arizona's policy to not count OOP ballots is one mechanism by which it enforces and administers this precinct-based system to ensure that it reaps the full extent of its benefits." ER49.

## Conclusion

Premature elimination of Arizona's important and valid election laws will irreparably harm local candidates in their imminent primary and general elections. Such elimination will have a chilling effect on the enactment of necessary future election laws since the burden to prevail on an objection is now so low if the majority's decision stands. More specifically, the majority's elimination of Arizona's OOP policy will uniquely harm candidates for local office.

Because the majority's opinion (1) conflicts with Seventh Circuit and its own prior authority and (2) fails to defer to the District Court's

11

well-reasoned factual determinations related to its application of the totality of circumstances test under Section 2, this case presents a substantial question for the Supreme Court and there is good cause for a stay. Fed. R. App. P. 41(d)(2). Simply, local elections matter and those candidates seeking federal or state-wide office should not undermine the foundations of democracy by marginalizing local candidates and neighborhood ballot issues. The importance of maintaining this foundation at the local governmental level and the effective administration of elections, are well reasoned and non-tenuous interests that are undermined by the majority's opinion.

Intervenor-Defendant-Appellants thus respectfully join in the Attorney General's request that this Court stay its mandate for ninety days so that the United States Supreme Court has the opportunity to weigh in on this significant matter that will have an effect on local elections throughout the country.

DATED this 3rd day of February, 2020.

       SNELL & WILMER L.L.P.

       */s/ Brett W. Johnson*
       Brett W. Johnson
       Colin P. Ahler
       SNELL & WILMER L.L.P.
       400 E. Van Buren, Suite 1900
       Phoenix, AZ 85004
       *Attorneys for Intervenor-Defendant-Appellees*
       Arizona Republican Party, Bill Gates, Suzanne Klapp, Debbie Lesko, and Tony Rivero

# CERTIFICATE OF COMPLIANCE

Pursuant to Fed. R. App. P. 32(g), I certify that:

This brief complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B) because it contains 1642 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(f).

This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because this brief has been prepared in a proportionately spaced typeface using Century Schoolbook 14-point font.

DATED this 3rd day of February, 2020.

SNELL & WILMER L.L.P.

*/s/ Brett W. Johnson*
Brett W. Johnson
Colin P. Ahler
SNELL & WILMER L.L.P.
400 E. Van Buren, Suite 1900
Phoenix, AZ 85004
*Attorneys for Intervenor-Defendant-Appellees*
Arizona Republican Party, Bill Gates, Suzanne Klapp, Debbie Lesko, and Tony Rivero

## CERTIFICATE OF SERVICE

I hereby certify that on February 3, 2020, I electronically filed the foregoing with the Clerk of the Court for the United States Court of Appeals for the Ninth Circuit by using the appellate CM/ECF system.

Participants in the case who are registered CM/ECF users will be served by the appellate CM/ECF system.

DATED this 3rd day of February, 2020.

        SNELL & WILMER L.L.P.

        */s/ Brett W. Johnson*
        Brett W. Johnson
        Colin P. Ahler
        SNELL & WILMER L.L.P.
        400 E. Van Buren, Suite 1900
        Phoenix, AZ 85004
        *Attorneys for Intervenor-Defendant-Appellees*
        Arizona Republican Party, Bill Gates, Suzanne Klapp, Debbie Lesko, and Tony Rivero